# Exhibit 1

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| | | COUNTY |
|---|---|---|
| PLAINTIFF(S): | Jonathan M. Shubow | Suffolk |
| ADDRESS: | | |
| | | DEFENDANT(S): GateHouse Media, LLC |
| ATTORNEY: | John A. Mangones, Esq. | |
| ADDRESS: | 33 Broad St., 11th Floor, Boston, MA 02109 | ADDRESS: 175 Sully's Trial, 3rd Floor, Pittsford, New York 14534 |
| BBO: | | |

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | [X] YES   [ ] NO |

*If "Other" please describe:

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses ............................................................ $ _____
    2. Total doctor expenses ............................................................ $ _____
    3. Total chiropractic expenses ...................................................... $ _____
    4. Total physical therapy expenses .................................................. $ _____
    5. Total other expenses (describe below) ............................................ $ _____
                       Subtotal (A): $ _____
B. Documented lost wages and compensation to date .................................... $ 100,000.00
C. Documented property damages to dated ............................................... $ _____
D. Reasonably anticipated future medical and hospital expenses ........................ $ _____
E. Reasonably anticipated lost wages .................................................. $ _____
F. Other documented items of damages (describe below) ................................. $ 50,000.00
emotional distress

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Lost wages and benefits and emotional distress caused by unlawful termination of employment due to contracting cancer

                                        TOTAL (A-F):$ $150,000.00

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

                                        TOTAL: $ _____

Signature of Attorney/Pro Se Plaintiff: X                      Date:

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X                                Date: 11/14/17

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                        SUPERIOR COURT
                                                    CIVIL ACTION NO.

_____
                                    )
JONATHAN M. SHUBOW,                 )
                                    )
                Plaintiff,          )
                                    )
v.                                  )
                                    )     **COMPLAINT AND JURY DEMAND**
GATEHOUSE MEDIA, LLC.               )
                                    )
                Defendant.          )
_____  )

## INTRODUCTION

This is a complaint for damages arising from unlawful disability and age discrimination against Plaintiff Jonathan M. Shubow by his former employer GateHouse Media, LLC in violation of M.G.L. c. 151B.  Because of Defendant's actions, Plaintiff has suffered lost wages and benefits, as well as emotional distress.

## THE PARTIES

1.      The Plaintiff, Jonathan M. Shubow ("Plaintiff" or "Shubow"), is a Massachusetts citizen residing at 27 Dix Street, Boston, Suffolk County, Massachusetts.

2.      The Defendant, GateHouse Media, Inc. ("Defendant" or "GateHouse"), is a New York limited liability company with a principal place of business at 175 Sully's Trial, 3rd Floor, Pittsford, New York and a Massachusetts Registered Agent at Corporate Service Company, 84 State St., Boston, Massachusetts.

## JURISDICTION AND VENUE

3.      The Jurisdiction of this Court is lawful and proper because as Plaintiff resides in Massachusetts and Defendant's unlawful conduct occurred in Massachusetts .

4.      Venue in Suffolk County is lawful and proper as Plaintiff resides there and the unlawful conduct occurred there.

## FACTUAL ALLEGATIONS

5.      Shubow was born in Portland, Maine on August 27, 1954.  He has worked in the Boston area for over 25 years in the fields of website development and online marketing.  Shubow is also a Vietnam-era U.S. Navy Veteran.

6.      In May 2007, Shubow was hired by GateHouse Media New England to be an Interactive Operations Manager in the Needham, Massachusetts office.  Exhibit A (Employment Contract).  This was a full time position, for which Shubow was provided a starting salary of $55,000 per year and the ability to participate in company benefits programs.  Id.

7.      In October 2013, Shubow was transferred from GateHouse Media New England to a position of Web Developer in the corporate parent, GateHouse Media, LLC.  This transfer arose because the New England Division was eliminated in an effort to consolidate digital operations in Texas.

8.      In this new position, Shubow initially worked under Ryan Sander, Director of Technology, and everything appeared to be going fine.

9.      Gradually, Shubow began to work more directly under Chris Hister, who, at the time, was based out of Chicago. It was at this time that Shubow began to have the perception that GateHouse was seeking to marginalize him.  Specific examples of this include:

a. After working at GateHouse for eight years, originally hired as an experienced manager, Shubow found himself with no employees or vendors to manage;

b. The digital team that Shubow worked with all went to meet up with other employees that they would eventually be working with, and Shubow was not invited;

c. Shubow was excluded from various meetings and conferences that he would normally be attending;

d. Other employees received new equipment while Shubow continued to work with an aging laptop;

e. Shubow's supervisor, Chris Hister, when speaking with him would call Shubow by a different name than used by his other co-workers and would repeatedly use this to affect a condescending and insulting manner of speaking with him;

f. Previously, Shubow had several interns assigned to him to work with and train, however, under Hister, he was told he would no longer have interns;

g. There were times when Shubow was not assigned any work or not assigned sufficient work to keep him busy.  When Shubow complained about this, Hister shrugged it off and said that was not how he managed; and,

h. Goals and future plans were never discussed with Shubow as they were previously.

10.    By contrast, Shubow's initial duties at GateHouse included reporting to a Vice President, intimate involvement with senior staff, attending important meetings and interacting vibrantly with co-workers on various high-profile projects.

11.     During the Summer and Fall of 2013, Shubow worked heavily on a project called "Best Ride" that was spun off from GateHouse.  As a reward for his extra efforts on the project, Shubow was led to believe that he would be considered for a position as part of the new team.

12.     However, when the Best Ride team was formed, Shubow was not included.  In fact, new, younger employees were hired at a higher pay than Shubow was earning.  Shubow was an experience manager in the same department as these newer employees.

13.     Shubow had only one or two performance reviews during his entire time at GateHouse, even though the employee handbook requires yearly reviews.

14.     In spite of these efforts to make him uncomfortable, and in addition to numerous medical difficulties, Shubow continued to work hard, including extra hours, and was productive and generally well liked, appreciated and respected by his co-workers outside of Chris Hister and Chris Biondi, the Director of Digital Development.

15.     In June 2015, Shubow received a call from Chris Biondi and Chris Hister and an email containing a Performance Improvement Plan (PIP).  This PIP letter indicated to Shubow that if his performance did not improve, he would be terminated in 30 days.

16.     On information and belief, the PIP letter had no basis and was merely a ploy to shame Shubow so that he would resign on his own.

17.     In fact, during the period of the alleged poor performance, Hister told Shubow that he was doing great, and that he was "on fire" with respect to closing tickets, and that he had a great week.  Shubow was also told he closed a record number of tickets for the entire company.

18.     The PIP letter indicated that subsequent weekly performance evaluations would take place.  This never occurred.  In fact, Shubow himself complained about the lack of evaluations to Chris Biondi.

19.     In his final year of employment at GateHouse, Shubow worked out of his home in Boston, Massachusetts approximately 90% of the time, and would only visit the Needham office, where he was based, to attend meetings.

20.     At the end of November 2015, doctors found a growth in Shubow's pancreas during a CAT scan.  Shubow went out on short-term disability, and was eventually hospitalized for pancreatitis.

21.     On or about January 2016, Shubow had a colonoscopy where the doctors found a large tumor that was subsequently diagnosed as cancer.

22.     On or about February 22, 2016, Shubow had surgery to remove the tumor and some lymph nodes.  It was at this time that the doctors discovered the cancer had spread and six months of chemotherapy was indicated.

23.     On March 14, 2016, at 6:07 p.m., Shubow sent an email to his direct managers at GateHouse informing them that he had Stage 3 cancer, that starting in April he would be undergoing aggressive chemotherapy lasting for six months, and that he would not be able to return to work until October at the earliest, if at all.  Exhibit B.

24.     On March 15, 2016, GateHouse sent a letter to Shubow at his home address in Boston, MA informing him that because his twelve weeks of leave under the Family Medical Leave Act had been used, and he was not able to return to the job, that his employment was terminated immediately along with his healthcare.  Exhibit C.

25.     GateHouse made no effort to communicate with Shubow about his illness or his desire and/or ability to return to work before sending the termination letter.

26.     Shubow's chemotherapy ended in September 2016, and Shubow could have been ready to resume work shortly thereafter.

27.     In May 2017, Shubow began working full time for a digital marketing agency that he co-founded, SERPCOM, which develops websites for businesses with an emphasis on search engine optimization. SERPCOM has grown steadily in the past year, and currently has three full time employees.

28.     On April 14, 2016, Shubow filed a complaint with the Massachusetts Commission Against Discrimination (MCAD) against GateHouse for discrimination based on age and disability. Exhibit D.

29.     At the time this complaint was filed, the MCAD was still in the process of investigating and had issued no determinations with regard to the claim.

## COUNT I – DISABILITY DISCRIMINATION IN VIOLATION OF G.L. c. 151B §4(16)

30.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

31.     GateHouse discriminated against Shubow by terminating his employment the day after he informed them that he had cancer and would be out of work for approximately six months while undergoing aggressive chemotherapy treatment.

32.     GateHouse could have offered Shubow a reasonable accommodation by extending his medical leave of absence by approximately six months while he underwent cancer treatment.

33.     Such an extension under no circumstances would ever be "indefinite," as due to the nature of Shubow's disease, the treatment would either work, in which case he would be able to return to work in his full capacity, or it would fail, in which case he would die within approximately the same timeframe.

34.     If provided this reasonable accommodation, Shubow would have been able to perform all of the essential functions of his job.

6

35.     Due to GateHouse's refusal to provide a reasonable extension of Shubow's medical leave of absence, Shubow has suffered damages including lost wages and benefits and emotional distress.

WHEREFORE, Shubow demands judgment in an amount to be determined at trial, together with multiple damages pursuant to G.L. c. 151B, § 9 and costs and attorney's fees.

## COUNT II – AGE DISCRIMINATION IN VIOLATION OF G.L. c. 151B §4(1B)

36.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

37.     Shubow is presently 63 years old, and at all relevant times, was over the age of 40.

38.     GateHouse discriminated against Shubow based on his age by, *inter alia*, isolating him within the company, removing his responsibilities, providing him limited resources and bypassing him in favor of younger employees for assignment to high priority projects.

39.     On information and belief, GateHouse's termination of Shubow's employment was motivated in part by age discrimination.

40.     Due to GateHouse's age discrimination, Shubow has suffered damages including lost wages and benefits and emotional distress.

WHEREFORE, Shubow demands judgment in an amount to be determined at trial, together with multiple damages pursuant to G.L. c. 151B, § 9 and costs and attorney's fees.

***PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS SO TRIABLE***

Respectfully Submitted,
**JONATHAN M. SHUBOW**
By his attorney,

John A. Mangones, BBO# 676107
Blake J. Godbout, BBO# 196380
**GODBOUT LAW PLLC**
33 Broad St., 11th Floor
Boston, MA 02109
(617) 523-6677

Dated: November 14, 2017

# EXHIBIT A



# GateHouse Media·

May 18, 2007

Mr. Jonathan Shubow
27 Dix Street
Dorchester, MA 02122

Dear Jonathan,

I am pleased to offer you the position of a regular full-time Interactive Operations Manager at GateHouse Media New England for our Interactive Department in Needham. This offer of employment is contingent upon verification of your background and positive reference checking. You will report to Anne Eisenmenger, VP Audience Development. Your first day with GateHouse Media New England is tentatively scheduled for Tuesday, May 29, 2007. Your rate of pay will be $2115.38, which annualized is $55,000.00 per year. This is paid on a bi-weekly basis for the time you work for GateHouse Media. After a period of 90 days you will meet with your manager to review your performance. You will be classified as an exempt employee. In addition, you will be entitled to participation in all benefit plans we offer for which you are eligible, all in accordance with the terms of such plans. You are scheduled to attend our Company Orientation at 9:00 a.m. on Monday, June 18, at a location to be determined. While the plans offered may change from time to time during your employment, we currently offer the following:

Paid Vacation, Sick and Personal Days which are reviewed during orientation
Health Insurance: 2 Blue Cross Blue Shield PPO plans  (required to work 30 hours)
Dental Insurance: MetLife  (required to work 30 hours)
Life Insurance: Sun Life Financial
401(k): Participation 1st of Month after 30 days of employment

The Immigration Reform and Control Act of 1986 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 require that all employers obtain documentation within the first three days of an individual's employment to verify eligibility for employment in the United States. Documentation acceptable by the Immigration and Naturalization Service is listed on the attached sheet. To insure compliance with the Acts, please bring original copies of your documentation to your manager and send copies to the Human Resources Department in Needham on your first day of employment. In order to comply with these laws we must have your cooperation.

As a formal indication of your acceptance of this position, please sign this letter in the space below and return one original to me on the day you begin. In accepting our offer of employment, you certify your understanding that your employment will be on an at-will basis, and that neither yourself nor the company has entered into a contract regarding the terms or duration of your employment. As an at-will employee, you will be free to terminate your employment with the company at any time, with or without cause or advance notice. Likewise, the company will have the right to reassign you, to change your compensation, or to terminate your employment at any time, with or without cause or advance notice.



**GateHouse** Media˙

We look forward to your arrival at GateHouse Media and are confident that you will play a key role in our company's growth and expansion.

To indicate acceptance of our offer, please sign and return one original of this letter to me.  Enclosed is a copy for your records.  If you have any questions, please feel free to contact me by calling 781-433-6918.

Very truly yours,

Anne Marie Dorsey
Vice President, Human Resources

The foregoing is hereby accepted on the _____ day of _____, 2007.

_____
Signature

cc:  Anne Eisenmenger

# EXHIBIT B

Mail - Update on Shubow                                    https://mail.google.com/mail/u/2/?ui=2&ik=0ba4a8cf69&view...



**GateHouse** Media

**Shubow, Jonathan <jshubow@gatehousemedia.com>**

## Update on Shubow
1 message

**Shubow - GateHouse Media** <jshubow@gatehousemedia.com>          Mon, Mar 14, 2016 at 6:07 PM
To: gfunkhouser@gatehousemedia.com, Karina Pagano <kpagano@gatehousemedia.com>
Cc: Christopher Biondi <cbiondi@gatehousemedia.com>

Hello:

I'm required to update you folks on my situation during my disability.

I've learned the following:

1. I have stage 3 cancer

2. I will undergo aggressive chemotherapy that will last at least 6 months starting some time in April

3. It's expected that I won't know anything further until sometime in October.

Therefore, you can assume I won't be able to return to work until sometime in October at the earliest, if at all.

My disability will likely continue past my period of short-term disability eligibility.

If anything changes, I'll update you.

Thank you.


**Jonathan Shubow**
GATEHOUSE MEDIA, INC.

E:  jshubow@gatehousemedia.com
L:  Jonathan Shubow on LinkedIn


3/19/16, 12:44

# EXHIBIT C



**GateHouse** Media®

March 15, 2016

Mr. Jonathan Shubow
27 Dix Street
Dorchester, MA 02122

Dear Jonathan,

As you were previously notified, the Family and Medical Leave Act of 1993 ("FMLA") gives certain employee the right to take up to 12 weeks of leave in a 12 month period for any of several reasons. The FMLA further provides that if the employee returns before or at the end of 12 weeks, the employee can return to the same or an equivalent position, with no loss in pay or benefits.

Our records reflect that your FMLA leave and the protections thereunder expired on February 17, 2016. Therefore, due to the fact that you have informed us that you are unable to return to work and perform the essential functions of the position that you previously held at GateHouse Media, I regret to inform you that we can no longer hold your position open and your employment will be terminated effective today.

Enclosed you will find information on the status of your GateHouse Media, LLC benefit plan participation as a result of your termination of employment.

We wish you a speedy recovery and the best in all of your future endeavors.  Please contact me if you have any questions.

Sincerely,

Gary Funkhouser
Human Resource Director

(816) 3506358



**GateHouse** Media°

The following provides information on the status of your GateHouse Media, LLC benefit plan participation as a result of your termination of employment.

**Medical Insurance/Dental/Vision**

If you participated in one of the health, dental and/or vision insurance plans offered by GateHouse Media, LLC, your coverage will terminate at midnight on last day of the month of your termination.  As a result of your termination, you and your covered dependent(s) may elect to continue coverage (referred to as COBRA) under the plan(s) that you were enrolled in as an active employee.
COBRA coverage may be continued up to a total of 18 months.

COBRA notices will be sent by WestLake Financial Group once coverage is terminated under GateHouse Media, LLC.  If you do not receive your COBRA notification within 10 business days, please contact Karyl Zoyak, Benefits Administrator (585) 598-0050.

If you have any questions concerning your COBRA coverage please contact WestLake Financial Group at (866) 420-8301.

**Life Insurance**

Your company-provided life insurance and any supplemental employee life, spouse or child life insurance which you may have voluntarily purchased will be terminated at midnight on date of termination.  The life insurance may be converted to an individual policy with The Standard. The premiums that you pay for a converted policy are determined by the insurance company and depend, in part, on your age.

Portability Notices for voluntary life insurance and Convertibility Notices for company provided life insurance will be mailed to participating employees.   Please complete and return the notice(s) to The Standard within 30 days of your termination date to be eligible for continued coverage.

Please contact their customer service center at (888) 937-4783 if you have any questions.

**401(k) Savings Plan**

Eligibility to participate in the New Media Investment Group, Inc. 401(k) plan will cease as of the date of your termination. If you participated in the 401(k) Savings Plan, you may elect to "roll over" your benefit to an individual retirement account (IRA) or another qualified retirement

Revised 6/1/2015

plan, or you may receive a lump sum distribution. If you select a lump sum payment, there are tax implications (ordinary income tax plus a 10% penalty tax that may be triggered, depending on your age) which you should consider before electing this option. If your account balance is greater than $5,000, you may also leave your money in the GateHouse Media, LLC plan until age 65. If you choose to take a distribution, paperwork maybe submitted to T. Rowe Price once your status has been updated to Terminated after the final GateHouse Media, LLC payroll has been processed and contributions have been credited to your account.

If you had an outstanding 401(k) loan you will have the option of paying the balance in full within 90 days of your termination date. Any unpaid loan balances beyond 90 days of your termination date will be treated as a taxable distribution.

If you have any questions regarding the New Media Investment Group, Inc. 401(k) Plan (#105905), you can call T. Rowe Price at (800) 922-9945. You can also obtain information on and make changes to your account at the T. Rowe Price website: www.rps.troweprice.com

**Flexible Spending Account (FSA)**

If you were participating in the GateHouse Media, LLC Flexible Spending Account (FSA), pre-tax contributions will cease as of the date of your termination. Participants can continue to submit claims with receipts for dependent care and health care expenses incurred from the effective date of their FSA benefit election through midnight of your termination date. You must submit your claim(s) for items incurred prior to termination within 90 days of your termination date.

Participants in the Health Flexible Spending plan may elect to continue their coverage under COBRA till the end of the plan year. Information to elect continued coverage after your termination will be included in your COBRA paperwork from WestLake Financial Group. Dependent Care Flexible Spending plans are not allowed to continue under COBRA.

If you have any questions regarding your claims or remaining balance you can contact WestLake Financial Group at (866) 420-8301 or access your account information online: www.benefitstalk.com/GateHouseMedia

**Payroll**

Direct deposit elections will be canceled and any payroll payments after termination will result in the form of a check that will be mailed to your address on record.

Please inform HR of any address changes after you have left employment for accurate delivery of your W-2 tax document next January.

# EXHIBIT D

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
**One Ashburton Place, Boston, MA 02108**
**Phone: (617) 994-6000 Fax: (617) 994-6024**

---

MCAD DOCKET NUMBER: 16BEM00927          EEOC/HUD CHARGE NUMBER: 16C-2016-01250
FILING DATE: 04/14/16                   VIOLATION DATE: 03/15/16

---

<u>Name of Aggrieved Person or Organization:</u>
Jonathan Shubow
27 Dix Street
Boston, MA 02122
Primary Phone: (339)225-0646 ext. _____

---

<u>Named is the employer, labor organization, employment agency, or state/local government agency who discriminated against me:</u>
GateHouse Media, Inc.
Attn: Director of Human Resources
175 Sully's Trail
Pittsford, NY 14534

No. of Employees:       25+

Work Location:

---

<u>Cause of Discrimination based on:</u>
Age, Age of Complainant, specified; Disability, Cancer.

---

**The particulars are:**
I, Jonathan Shubow, the Complainant believe that I was discriminated against by GateHouse Media, Inc., on the basis of Age, Disability. This is in violation of M.G.L. 151B Section 4 Paragraph 1B; M.G.L. 151B Section 4 Paragraph 16 and Title VII, ADA, ADEA.

I, Jonathan Shubow, believe I was discriminated against on the basis of my Disability and Age. I have a surgically altered airway, with a condition that causes the airway to close. I have Colon, and Lymph Node Cancers, and Pancreatitis. I am 61 years old. My conditions inhibit my ability to communicate vocally.

1.       In May 2006, I was employed by GateHouse Media New England, owned by GateHouse Media, Inc. (which is headquartered in Pittsford, NY). My position was Web Operations Manager. My duties involved social media and technical work.
2.       I was transferred to Corporate in 2010, and worked between offices in Needham, MA, Randolph, MA, and from home. My management duties were removed.
3.       Around 2003, prior to my employment with GateHouse, I received a vocal cord implant. Following the implant, I did not have issues talking, but occasionally I would cough and/or aspirate.
4.       I received praise for my work, and once closed a record number of tickets for the company.
5.       In 2013, I was informed that I would be considered for a position at Best Ride, owned by GateHouse, if I kept up my good work. I ultimately did not receive the position, and it was given to two much younger people of whom I believe were less qualified than myself.
6.       Around 2013, I received a tracheostomy. The hole began to bleed, and I had trouble talking, but this did not matter much because I generally communicated by email.
7.       In the summer of 2015, I received a new boss, who began requesting that I communicate with people by phone, knowing full well of my disability. This was a minor change that seemed unnecessary. I am not sure if this became policy or not, but I accepted it. On some days I had issues speaking, while on other days I was fine.
8.       I no longer received invites to meetings which I used to regularly attend.
9.       In November 2015, I filed for and was granted FMLA for a tumor in my pancreas and colon. It lasted until February 17, 2016.

MCAD Docket Number 16BEM00927, Complaint

10.      I had kept my employer updated whenever there were developments in my medical history, such as undergoing surgeries.

11.      I received numerous operations, and was informed in March 2016 that I had cancer and would require undergoing chemotherapy. I was also diagnosed with pancreatitis.

12.      On March 15, 2016, I informed GateHouse via email that I would have to undergo cancer treatment, and would be unable to return to work until October 2016. That same day my health insurance was cancelled, and I was terminated. The letter of termination said that, "because I had used up the 12 weeks of FMLA, and because I could no longer perform the essential functions of the job," I was being terminated.

13.      One of my friends, WB, was terminated from his position as a Managing Editor in the GateHouse Metro Division of New England. He is in his early 60s.

Based on the above information, I believe that GateHouse Media, Inc. has discriminated against me on the basis of Disability and Age.
--------------------------------------------------------------------------------------------------------------------------
I hereby verify, under the pains and penalties of perjury, that I have read this complaint and the allegations contained herein are true to the best of my knowledge.


_____
(Signature of Complainant)

MCAD Docket Number 16BEM00927, Complaint